Donald Dean JONES, Appellant,

v.

MIDWEST PRE COTE COMPANY,
a Corporation, Respondent.

No. 52046.

Supreme Court of Missouri,
Division No. 1.

March 13, 1967.

Arthur J. Kase, Rubins, Kase & Rubins, Kansas City, for appellant.

Donald E. Willson, Madden & Burke, Kansas City, for respondent.

SAMUEL E. SEMPLE, Special Judge.

Plaintiff recovered a verdict and judgment for $25,000.00 for personal injuries sustained in a collision which occurred in an underground limestone quarry of defendant between a truck operated by plaintiff and a vehicle called a "dumpster" operated by an employee of defendant. Defendant's Motion for New Trial was sustained by the trial court for the sole reason that the verdict of the jury was a quotient verdict. Plaintiff has perfected this appeal from the trial court's order granting defendant a new trial assigning as error the finding of the trial court that the verdict of the jury was a quotient verdict. Defendant contends that the order granting a new trial was proper not only for the stated reason of the trial court but for the additional reason that Instruction No. 3 offered by plaintiff and given by the court was erroneous because there was no evidence to support one theory of negligence submitted in the instruction.

Plaintiff, a truck driver employed by an independent contractor, was injured on August 31, 1962, in a collision between the truck he was operating and a vehicle called a dumpster operated by an employee of defendant. The accident occurred in an underground rock quarry owned and operated by defendant. Plaintiff was driving in a westerly direction along a roadway inside the quarry approaching an intersecting north-south roadway. Clarence Owens, an employee of defendant, driving a dumpster, a vehicle used for hauling rock inside the mine, was driving in a northerly direction on the north-south roadway. The dumpster turned right at the intersection to proceed east and in making the turn the left front corner of the dumpster collided with the left side of the bed and left rear wheel of plaintiff's truck. Plaintiff was thrown out of the right door of the cab of his truck by the force of the impact.

The southeast corner of the intersection was formed by a large rock pillar which created a blind intersection for vehicles approaching from the south and the east. The traveled portion of the east-west road on which plaintiff was driving was 26 to 28 feet wide. As plaintiff approached the intersection he testified that he was traveling on his right-hand side of the road about five, ten or possibly thirteen miles per hour. When the front of his truck reached a point 36 to 38 feet east of the east line of the intersection he observed the front of the dumpster then traveling in a northerly direction even with the south line of the intersection and approximately five feet west of the rock pillar at the southeast corner of the intersection. The driver of the dumpster, Owens, testified that as he traveled north, he first observed plaintiff's truck when he started to turn right. He observed only the chrome on the right headlight of the truck because his view was obstructed by the pillar. Owens stated that at the time he first saw the truck the dumpster was traveling ten to twelve miles per hour. He further stated that at that speed a loaded vehicle could be stopped in twelve, possibly fifteen feet. In making the turn Owens testified that he did not turn his vehicle as far to the right as he intended. At the time of impact plaintiff's truck was facing to the west and the dumpster was headed in a northeast direction. Other facts will be stated as are necessary.

The verdict returned in the case was signed by nine members of the jury. Defendant's Motion for New Trial had at-

tached thereto the affidavits of two of defendant's attorneys which stated in substance that shortly after the jury returned its verdict they went into the jury room and found certain papers in the wastebasket among which was a paper, containing figures, which was attached to the motion and marked Exhibit 1. One of the affidavits stated that the paper marked Exhibit 1 was shown to Victor L. Thompson, foreman of the jury, and was identified by him as being in his handwriting.

Exhibit 1 was as follows:

The trial court filed a memorandum of its findings at the time the order was made granting a new trial for the reason that the verdict of the jury was a quotient verdict, which memorandum reads in part as follows:

"* * * While it is true that our courts long have held that a party who attacks a verdict upon the ground that it is a quotient verdict must show that there was a prearrangement among the jurors to accept an unknown, unascertained quotient as their verdict and that further a presumption arises that there was no such prearrangement among the jurors, yet this Court feels that under the evidence produced in the motion for new trial the paper writing in the foreman's handwriting shows twelve amounts set down in a column, the total of those amounts taken and then divided by twelve, with a resulting quotient, which amount later was the amount of the verdict, were such circumstances that the presumption can be and is overcome and that an overpowering implication then arises that the jurors did agree in advance that each juror should set down the amount that he thought the verdict should be and that said amounts should be added and then divided by twelve and that the unknown figure would be accepted as the verdict of the jury. * * *"

Defendant argues in support of the ruling of the court that Exhibit 1 clearly shows that the jury did take a total of twelve suggested figures and divided that total by twelve to arrive at an average or quotient of $25,000.00, and that because the verdict of the jury was for $25,000.00 a reasonable inference may be drawn that there was an agreement in advance to

accept an unknown and unascertained quotient as their verdict. This contention is not well taken.

■ The law in Missouri respecting quotient verdicts is well settled. It has been held that a verdict arrived at by a prearranged agreement among the jurors to be bound by the result of the averaging of the individual estimate of the jurors, amounts to misconduct on the part of the jury and such a verdict should not be permitted to stand. Thompson v. City of Lamar, 322 Mo. 514, 17 S.W.2d 960, 976. However, it is the well-established and settled rule in this state that to establish a verdict as a quotient verdict it must be shown that there was a prearranged agreement among the jurors to accept the unknown and unascertained quotient as their verdict, and the presumption is that there was no such prearrangement among the jurors. Thompson v. City of Lamar, supra, and cases therein cited; Kamo Electric Co-operative v. Earnest, Mo.App., 277 S.W.2d 876, 878. It is also well settled that if the jurors have not bound themselves beforehand to accept the unascertained quotient as their verdict, but after the quotient is ascertained it is then adopted as their verdict, the fact that they used that method of reaching an agreement will not invalidate their verdict. Kamo Electric Co-operative v. Earnest, supra; Chrum v. St. Louis Public Service Co., Mo., 242 S.W.2d 54, 56.

Exhibit 1 attached to the Motion for New Trial is the only evidence submitted that can possibly offer any explanation as to how the jury arrived at their verdict. This exhibit contains four different columns or groups of figures. On the left side of the page is a column of twelve figures with a total of 301,000 which is divided by twelve with a quotient of 25,000 beside it, although the exact quotient is 25,080. To the right is another column of twelve figures with ten of the figures bracketed with a figure of $22,000 beside the bracket, and below the column is the figure "25,000" with "Avg"

written beside it. Below these two columns is a column subtracting 80,000 from 301,000 with a figure below the line of 22,100 and then an encircled figure "$22,000" to the side. On the right side of the paper is another column or group of four figures with the figures "$16,000", "$35,000" and "$20,000" with lines drawn through them and the figure "$25,000.00" below.

It is apparent from examining all of the computations and figures contained on Exhibit 1 that the jury considered several different amounts while deliberating, such as $25,000, $22,000, or possibly $16,000, $35,000 and $20,000. Only nine of the twelve jurors signed the verdict, so if the twelve figures in each of the two large columns were suggested amounts put down by each of the twelve jurors the approximate quotient (as contrasted to the exact quotient of $25,080) could not be the result of an agreement in advance by the entire jury to accept an unknown and unascertained quotient.

■ Taking into account the circumstance that the jury considered several different amounts, coupled with the circumstance that only nine members of the jury rendered a verdict in the same amount as the approximate quotient of the total of twelve suggested amounts, it can no more reasonably be inferred that the nine members of the jury agreed in advance to accept such quotient as their verdict than that the nine members of the jury subsequently agreed to adopt such quotient, which of course would not render the verdict invalid. Chrum v. St. Louis Public Service Co., Mo., 242 S.W.2d 54, 56. It is concluded that the evidence presented is insufficient to overcome the presumption that there was no prearrangement among the nine jurors to accept an unknown and unascertained quotient as their verdict. The court erred in holding the verdict to be a quotient verdict.

Defendant contends that Instruction No. 3 offered by plaintiff and given by the court was erroneous for the reason that the

instruction is submitted in the disjunctive on two theories of negligence and there was no evidence to justify the giving of the second theory of negligence. The pertinent portion of the instruction reads as follows:

"Your verdict must be for plaintiff if you believe:

"First, defendant's driver, Clarence Owens, either drove at an excessive speed, or knew or by the use of ordinary care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped or slackened his speed and swerved but Clarence Owens failed to do so, and * * *."

Defendant's specific complaint is that there was no substantial evidence to support the submission of failure to stop, slacken speed, or swerve. Defendant argues that the duty to take evasive action hypothesized in the instruction to have stopped, or slackened his speed and swerved does not arise upon the mere approach and entrance to an intersection but that the duty only arises at the time when he had the opportunity, in the exercise of ordinary care, to have observed the likelihood of a collision to thereafter have time to stop, slacken his speed and swerve. Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111, 114. Defendant further argues that under the evidence that from the time the dumpster operator first saw plaintiff's truck and plaintiff first saw the dumpster until the collision, the dumpster traveled only 19 feet while during the same time plaintiff's truck traveled thirty-six to thirty-eight feet. Defendant then draws the conclusion that there were no circumstances prior to the time when both drivers saw the other which gave rise to a duty upon the dumpster operator to take evasive action to avoid a collision and that after the dumpster operator first saw plaintiff's truck there was no opportunity to take evasive action to avoid collision.

■ The point is not well taken. In considering whether plaintiff made a sub-

missible case on the theory of negligence submitted, the evidence must be considered in the light most favorable to the plaintiff and take plaintiff's evidence as true, where it is not entirely unreasonable or opposed to physical laws, and to give plaintiff the benefit of all reasonable inferences arising from all the evidence. Foster v. Kansas City Southern Railway Co., Mo., 306 S.W. 2d 521, 522.

■ There was evidence that at the time the dumpster operator first observed plaintiff's truck he was at the south line of the intersection about five feet west of the pillar forming the southeast corner of the intersection starting to turn north and traveling about ten to twelve miles per hour. The point of impact was shown to be about eighteen to nineteen feet east of the east line of the intersection, and plaintiff's truck was on the north side of the east-west road which was twenty-six to twenty-eight feet wide. Thus, after the dumpster operator first saw the plaintiff's truck, his vehicle, in making the turn to the north, traveled at least thirteen to fourteen feet north and twenty-three to twenty-four feet to the east before the left front corner of the dumpster struck the left rear wheel and bed of the truck. There was evidence that a loaded vehicle traveling ten to twelve miles per hour would be able to stop in twelve, possibly fifteen feet and that the dumpster operator did not turn his vehicle as far to the right as possible when he first saw the truck. The dumpster operator was turning east on the east-west road when he first observed plaintiff's truck. The south half of the east-west road, approximately thirteen to fourteen feet in width, was unobstructed so that by swerving to the right or south side of the east-west road the dumpster could have avoided colliding with plaintiff's truck. It is concluded there was sufficient evidence to support the submission of failure to stop, slacken speed, or swerve as set out in Instruction No. 3.

The order granting a new trial is reversed and the cause is remanded with directions

to reinstate the verdict and judgment for plaintiff.

PER CURIAM.

The foregoing opinion by SAMUEL E. SEMPLE, Special Judge, is adopted as the opinion of the Court.

All concur.