**STATE EX REL. NORFOLK SOUTHERN RAILWAY COMPANY, Relator,**

v.

**The Honorable Colleen DOLAN, Respondent.**

**No. SC 95514**

Supreme Court of Missouri, **en banc.**

Opinion issued February 28, 2017

Rehearing Denied April 4, 2017

44 ■

Kurt E. Reitz, Erik P. Lewis, Thompson Coburn LLP, Belleview, IL, Booker T. Shaw, Thompson Coburn LLP, St. Louis, MO, for Norfolk Southern Railway Company.

Edward D. Robertson Jr., Anthony L. DeWitt, Mary D. Winter, Bartimus, Frickleton and Robertson PC, Jefferson City, MO, Eric Holland, Carl Kessinger, Holland Law Firm, St. Louis, MO, for Russell Parker.

Laura Denvir Stith, Judge

Norfolk Southern Railway Company, a Virginia corporation, seeks a writ of prohibition directing the trial court to dismiss the underlying personal injury action brought against it under the Federal Employer's Liability Act (FELA), 45 U.S.C. §§ 51 et seq. Norfolk alleges Missouri has no personal jurisdiction over it where, as here, the injury occurred in Indiana to Russel Parker, an Indiana resident, as a result of his work for Norfolk in Indiana.

This Court agrees that Missouri does not have specific or general personal jurisdiction over Norfolk. Though Norfolk does own and operate on railroad tracks in Missouri, the personal injury action did not arise out of, and does not relate to, Norfolk's activities in Missouri, thereby depriving Missouri of specific jurisdiction. A plaintiff may bring an action in Missouri on a cause of action unrelated to a corporation's Missouri activities if the corporation is incorporated in Missouri, has its principal place of business in Missouri, or in the exceptional case when its contacts with Missouri are so extensive and all-encompassing that Missouri, in effect, becomes another home state. None of these requirements is met here. While Norfolk does substantial and continuous business in Missouri, it also conducts substantial and continuous business in at least 21 other states, and its Missouri business amounts to only about 2 percent of its total business. This is insufficient to establish general personal jurisdiction over Norfolk.

This Court also rejects Parker's argument that, by complying with Missouri's foreign corporation registration statute, Norfolk impliedly consented to general jurisdiction in Missouri, as well as the argument that FELA provides an independent basis for jurisdiction over Norfolk. Missouri's registration statute does not require foreign corporations to consent to suit over activities unrelated to Missouri, and the cited FELA statute is a venue statute that does not provide an independent ground for jurisdiction of FELA cases in state courts that do not otherwise have personal jurisdiction over the defendant. The preliminary writ of prohibition is made permanent.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying action is a personal injury FELA lawsuit filed in St. Louis County by Russell Parker, a resident of Indiana, against Norfolk, a Virginia corporation with its principal place of business in Virginia. Parker alleges cumulative trauma

injury sustained during his years of employment with Norfolk in Indiana.

Norfolk annually complies with Missouri's foreign business registration statutes by registering with the state and designating an agent to receive service of process. §§ 351.574 et seq.[1] Norfolk also has brought suit and been sued in Missouri courts numerous times, but only for matters arising from or related to its activities in Missouri. Parker never worked for Norfolk in Missouri. He does not allege any negligence or other conduct or omission by Norfolk in Missouri caused the injury, nor does his petition set out any basis for specific or general personal jurisdiction over Norfolk other than his statement that Norfolk conducts substantial business and owns property in Missouri. While the record shows that Norfolk's train tracks run through Missouri, it also shows that those tracks span at least 22 states, and that the portion of Norfolk's business conducted in Missouri is only about 2 percent of its nationwide business activity.

Norfolk moved to dismiss for lack of personal jurisdiction. After a hearing, the trial court overruled the motion without stating the grounds for its ruling. Norfolk then filed a petition for a writ of prohibition or, in the alternative, a writ of mandamus in the Missouri Court of Appeals. That petition was denied, and Norfolk sought the same relief in this Court. This Court issued a preliminary writ of prohibition.

Parker argues that Missouri has both general and specific jurisdiction over Norfolk and, alternatively, that Norfolk consented to personal jurisdiction by registering to do business in Missouri and appointing a Missouri agent for service of process, or that FELA confers specific personal jurisdiction over a railroad in any state where the railroad owns or operates tracks. For the reasons set out below, this Court rejects these arguments, which often inappropriately blur the distinct bases on which each type of jurisdiction is based. Because the Court finds that none of the bases for jurisdiction alleged is supported by the record, the preliminary writ is made permanent.

## II.  STANDARDS APPLICABLE TO ISSUANCE OF WRIT OF PROHIBITION

■ This Court has discretion to issue and determine original remedial writs. Mo. Const. art. V, § 4.1. "Prohibition is the proper remedy to prevent further action of the trial court where personal jurisdiction of the defendant is lacking." State ex rel. William Ranni Assoc., Inc. v. Hartenbach, 742 S.W.2d 134, 137 (Mo. banc 1987) (issuing a writ for the trial court's improper denial of a motion to dismiss for lack of personal jurisdiction). "The extraordinary remedy of a writ of prohibition is available: (1) to prevent the usurpation of judicial power when the trial court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted." State ex rel. Missouri Pub. Def. Comm'n v. Waters, 370 S.W.3d 592, 603 (Mo. banc 2012). However, prohibition is only proper "when usurpation of jurisdiction ... is clearly evident." State ex rel. Tarrasch v. Crow, 622 S.W.2d 928, 937 (Mo. banc 1981).[2]

---

1.  All statutory citations are to RSMo. 2000, unless otherwise indicated.

2.  For a discussion of the distinction—if any—between writs of prohibition and mandamus as well as their historical origins, see State ex rel. Unnerstall v. Berkemeyer, 298 S.W.3d 513, 515 nn.1, 2, 515–16 (Mo. banc 2009), and

## III. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER NORFOLK

### A. General Principles Governing Personal Jurisdiction.

■ Personal jurisdiction is the authority of a court over the parties in a particular case. *State ex rel. Kansas City S. Ry. Co. v. Nixon*, 282 S.W.3d 363, 365 (Mo. banc 2009); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). It is a due process requirement that limits the power of state courts over litigants. *Daimler AG v. Bauman*, —— U.S. ——, 134 S.Ct. 746, 751, 187 L.Ed.2d 624 (2014); *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 231 (Mo. banc 2010). The basis of a court's personal jurisdiction over a corporation can be general—that is, all-purpose jurisdiction—or it can be specific—that is, conduct-linked jurisdiction. *Daimler*, 134 S.Ct. at 751. Additionally, because personal jurisdiction is an individual right, a defendant may waive jurisdictional objections by consenting to personal jurisdiction. *State ex rel. Heartland Title Servs., Inc. v. Harrell*, 500 S.W.3d 239, 241 (Mo. banc 2016).

### B. General Jurisdiction

■ "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In recent years, the Supreme Court has clarified the test for when the exercise of general jurisdiction over a corporation comports with due process. *Daimler*, 134 S.Ct. at 754; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011). A court normally can exercise general jurisdiction over a corporation only when the corporation's place of incorporation or its principal place of business is in the forum state. *Goodyear*, 564 U.S. at 919, 131 S.Ct. 2846; *Daimler*, 134 S.Ct. at 754.[3] In "exceptional cases," general jurisdiction may exist in an additional state if the corporation's activities in that other state are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S.Ct. at 761 n.19.

■ Parker argues that Norfolk's "continuous and systematic" business in Missouri supports finding that Missouri has general jurisdiction over it even for cases not arising from its activities in Missouri. Prior to *Daimler*, this would have been a valid argument. *State ex rel. K-Mart Corp. v. Holliger*, 986 S.W.2d 165, 168–69 (Mo. banc 1999). But, it is no longer the law. In *Daimler*, the plaintiff similarly argued a large corporation's subsidiary conducting substantial and continuous business in the state as the state's largest seller of luxury cars was sufficient to establish jurisdiction. *Daimler*, 134 S.Ct. at 752, 758. The Supreme Court expressly rejected that argument. While Daimler did substantial and continuous business in California, it did business throughout the United States and its California business constituted only 2.4 percent of its total sales. *Id.* at 752. The Supreme Court held

*State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 807 (Mo. banc 2015).

**3.** The rule stems from the framework for general jurisdiction over natural persons: states may exercise general jurisdiction over natural persons who are domiciles of the state. *Daimler*, 134 S.Ct. at 760. A corporation's equivalent of "domicile" includes its state of incorporation and the state where it has its principal place of business. *Id.*

that the mere conduct of these systematic and continuous business activities in the state was not sufficient to subject the corporation to general jurisdiction in the state for all causes of action not related to that state. *Id.* at 761.

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627–30 (2d Cir. 2016), applied *Daimler*'s appraisal of a foreign corporation's forum activity to Lockheed, which was sued in Connecticut for a claim not connected in any way to its Connecticut activities. Lockheed was incorporated and had its principal place of business in Maryland, but it registered to do business in Connecticut and complied with Connecticut's registration statutes requiring designation of an in-state agent to receive service of process. *Id.* at 622. Over the relevant time span, it generated approximately $160 million in revenue and employed between 30 and 70 people per year in Connecticut; maintained a physical presence in the state, including lease of a 9,000–square-foot building for at least 15 years; carried worker's compensation insurance and defended eight lawsuits in the state during the relevant time span. *Id.* at 622, 628 & n.9.

Though Lockheed's Connecticut business was substantial, it composed only a small portion of its overall business: for the relevant time period, only 0.05 percent of Lockheed's employees and no more than 0.107 percent of its total revenue came from its Connecticut activities. *Id.* at 629. The Second Circuit concluded, "Lockheed's contacts with Connecticut fall far short of the relationship that Due Process requires, under *Daimler* and *Goodyear*, to permit the exercise of general jurisdiction over Lockheed by Connecticut courts." *Id.* at 630.

This analysis is directly applicable here. Norfolk owns or operates some 400 miles of track, generates approximately $232

million in revenue, and employs some 590 people in Missouri. It has appointed a registered agent in Missouri. Yet this activity in Missouri represents a tiny portion of Norfolk's entire nationwide business. Norfolk generates only about 2 percent of its total revenues from its Missouri activities. It generates greater revenue in 11 other states. It has track in 22 states; only about 2 percent of the track it owns and 2 percent of the track it operates is in Missouri. Only about 2 percent of its total employees are in Missouri as well. Norfolk has more employees in each of 13 other states than it does in Missouri. Its Missouri contacts are insufficient to establish general jurisdiction over Norfolk in Missouri under the principles set out in *Daimler*, 134 S.Ct. at 757.

Parker notes that Norfolk has sued and been sued in Missouri courts in the past and that this constitutes a recognition of jurisdiction in Missouri courts. Parker also reiterates that Norfolk has many miles of track in Missouri and might be sued by Missouri residents, so Missouri is not an inconvenient or unexpected place for it to be sued, and, as such, Norfolk should be considered at home in Missouri.

■■■■ Parker's arguments blur the distinction between general and specific jurisdiction as well as between jurisdiction and venue. *Id.* The prior suits against Norfolk that Parker cites were suits based on specific jurisdiction because they concerned injuries that occurred in Missouri or arose out of Norfolk's activities in Missouri. Considerations of convenience may also have made venue appropriate in particular Missouri courts for those suits. Nonetheless, the minimum contacts that suffice to provide specific jurisdiction over such a particular Missouri-related lawsuit do not also confer general jurisdiction over a particular company for a non-Missouri-related lawsuit.

■ Parker notes the Supreme Court recognized in *Daimler* that, in exceptional cases, a state may have general jurisdiction over a corporation not incorporated there and that has not located its principle place of business in that state. But the Supreme Court has made it clear that to be such "an exceptional case," the forum state must be a "surrogate for place of incorporation or home office" such that the corporation is "essentially at home" in that state. *Daimler*, 134 S.Ct. at 756 n.8, 761 n.19. To find a corporation is "essentially at home" requires comparing the corporation's activities in the forum state with its activities in other states through "an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id.* at 762 n.20. The Supreme Court observed that finding a corporation at home wherever it does business would destroy the distinction between general and specific jurisdiction, for "[a] corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* For this reason, when "a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'" *Brown*, 814 F.3d at 629.[4]

Here, the record shows that most of the other 21 states in which Norfolk conducts business have at least as much contact with it as does Missouri, in which only 2 percent of its business and employees are located. That this is still a large dollar amount of business does not make it a basis for finding that Missouri and these other 21 states are all "home" states for Norfolk. The nature of Norfolk's activities in Missouri are quite distinct from the "nerve-center" of activities that the Supreme Court has said might be sufficient to make a "home" state. *See Hertz Corp. v. Friend*, 559 U.S. 77, 92, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010). Norfolk's activities in Missouri are only a very small part of its overall activities, and not of the nature that makes Missouri its de facto principal place of business. Missouri courts may not assert general jurisdiction over Norfolk in the underlying case.

### C. Specific Jurisdiction

■ Parker also argues that Missouri has specific jurisdiction over Norfolk. Specific jurisdiction requires consideration of the "relationship among the defendant, the forum, and the litigation." *Andra v. Left Gate Prop. Holding, Inc.*, 453 S.W.3d 216, 226 (Mo. banc 2015), *quoting Walden v. Fiore*, —— U.S. ——, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014). *Daimler* notes that specific jurisdiction "encompasses cases in which the suit arises out of or relates to the defendant's contacts with the forum." 134 S.Ct. at 748–49 (internal quotation and alterations omitted). Because Norfolk has purposefully availed itself of the opportunity to do business in Missouri, it would be subject to specific jurisdiction in Missouri. But that jurisdiction would exist only over claims that are related to those contacts. *See Andra*, 453 S.W.3d at 227; *Bryant v. Smith Interior Design*

---

4. The only example *Daimler* gave, or the United States Supreme Court has since given, is *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 447, 72 S.Ct. 413, 96 L.Ed. 485 (1952), which it describes as the "textbook case of general jurisdiction" over a foreign corporation. *Daimler*, 134 S.Ct. at 755–56. Benguet moved its headquarters to Ohio because the United States was at war with Japan, where its principal place of business normally was located. *Id.* at 756. Because the headquarters were moved, there was general jurisdiction in Ohio. *Id.*

*Grp., Inc.,* 310 S.W.3d 227, 233–34 (Mo. banc 2010). Unrelated suits can be brought in the forum only when the forum has general jurisdiction.. *Id.* at 754; *Andra,* 453 S.W.3d at 227.[5]

For the reasons already discussed, Norfolk's contacts are not sufficient to establish general jurisdiction. Only if the instant suit arises out of Norfolk's contacts with Missouri does Missouri have specific jurisdiction. Parker pleaded no facts alleging that the injury arose from Norfolk's Missouri activities. Therefore, the fact that he could sue in Missouri in a case in which the injury arose out of his contacts with Missouri does not support finding general personal jurisdiction here.

■ Parker alternatively argues that Missouri has personal jurisdiction over Norfolk because it does engage in railroad business in Missouri and the injuries arose out of railroad business conducted by Norfolk in Indiana, so the injuries in Indiana were injuries "arising from or related to" the same "type" of activities as Norfolk's Missouri activities.

While Parker cites cases utilizing a variety of tests for determining when a specific injury "arises from or relates to" the defendant's activity in the forum state—tests ranging from but-for causation to proximate cause—none support the proposition that, if a company is a national company that does the same "type" of business in the forum state as in the rest of the country, it can be sued anywhere. Just because a company like Ford, for example, sells cars in Iowa and in California, does not mean there is jurisdiction in California for injuries that occurred in Iowa simply because Ford engages in the same "type" of activity—selling cars—in both states. Such an argument goes even further than the pre–*Daimler* approach to *general* jurisdiction that *Daimler* rejected as providing no authority for general jurisdiction over a company. To say this same conduct confers specific jurisdiction over suits the facts of which have no relationship to the forum state would be to turn specific jurisdiction on its head. There would never be a need to discuss general jurisdiction, for every state would have specific jurisdiction over every national business corporation. Par-

5.  The Supreme Court's explanation of the difference between general and specific jurisdiction in *Goodyear Dunlop Tires Operations, S.A. v. Brown.* 564 U.S. 915, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011), may be helpful:

> Endeavoring to give specific content to the "fair play and substantial justice" concept, the Court in *International Shoe* classified cases involving out-of-state corporate defendants. First, as in *International Shoe* itself, jurisdiction unquestionably could be asserted where the corporation's instate activity is "continuous and systematic" and *that activity gave rise to the episode-in-suit.* 326 U.S. at 317, 66 S.Ct. 154. Further, the Court observed, the commission of certain "single or occasional acts" in a State may be sufficient to render a corporation answerable in that State with respect to those acts, though not with respect to matters unrelated to the forum connections. *Id.,* at 318, 66 S.Ct. 154. The heading courts today

> use to encompass these two *International Shoe* categories is "specific jurisdiction." ... Adjudicatory authority is "specific" when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros,* 466 U.S. at 414, n. 8, 104 S.Ct. 1868.

*Goodyear,* 564 U.S. at 923–24, 131 S.Ct. 2846. By contrast, *Goodyear* said:

> *International Shoe* distinguished from cases that fit within the "specific jurisdiction" categories, "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." 326 U.S. at 318, 66 S.Ct. 154. Adjudicatory authority so grounded is today called "general jurisdiction." *Helicopteros,* 466 U.S. at 414, n. 9, 104 S.Ct. 1868.

*Id.* at 924.

ker does not cite a single case to support his theory, which would completely do away with the distinction between general and specific jurisdiction and would undermine *Daimler*'s test for general jurisdiction.

■■■■■ Parker further argues that FELA itself provides specific jurisdiction any place a railroad corporation has tracks. The relied-upon provision in FELA does not even purport to confer personal jurisdiction. Venue refers to where suit may be brought and not the power of the court over defendants, and the first part of the provision has long been characterized by the United States Supreme Court as "the venue provisions of [FELA]." *Pope v. Atl. Coast Line R. Co.*, 345 U.S. 379, 380, 383, 73 S.Ct. 749, 97 L.Ed. 1094 (1953). It provides:

> Under this chapter *an action may be brought* in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.

*45 U.S.C. § 56* (emphasis added).

■■■ The final sentence of section 56 also does not address personal jurisdiction in state court. As the United States Supreme Court has explained, that sentence addresses subject matter jurisdiction of state and federal courts over FELA suits, but it is not intended to enlarge personal jurisdiction:

> [W]e deem it well to observe that there is not here involved any attempt by Congress to enlarge or regulate the jurisdiction of state courts, or to control or affect their modes of procedure, but only a question of the duty of such a

court, when its ordinary jurisdiction, as prescribed by local laws, is appropriate to the occasion, and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress, and susceptible of adjudication according to the prevailing rules of procedure.

*Mondou v. N.Y., New Haven & Hartford R.R.*, 223 U.S. 1, 56–57, 32 S.Ct. 169, 56 L.Ed. 327 (1912). In other words, "FELA provides a regime of concurrent federal and state jurisdiction, ... but this refers to subject matter jurisdiction. ... Nothing in the act addresses the matter of personal jurisdiction in the state court." *S. Pac. Transp. Co. v. Fox*, 609 So.2d 357, 362–63 (Miss. 1992).

Parker's broader reading of FELA relies largely on three cases from the 1930s, '40s and '50s that do not actually discuss whether FELA confers personal jurisdiction. One is *Pope*, which was a venue case and did not address personal jurisdiction. *Pope*, 345 U.S. at 382–83, 73 S.Ct. 749. *Miles v. Illinois Central Railroad Company*, 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129 (1942), also did not involve personal jurisdiction but rather "the burden of expense and inconvenience" and whether the railroad "must submit to inconvenience and expense, *if there is jurisdiction*, 'although thereby interstate commerce is incidentally burdened.'" *Id.* at 700, 701–02, 62 S.Ct. 827 (emphasis added). It concludes "the right to sue in state courts of proper venue *where their jurisdiction is adequate* is of the same quality as the right to sue in federal courts." *Id.* at 704, 62 S.Ct. 827 (emphasis added). *Denver & Rio Grande Western Railroad Company, v. Terte*, 284 U.S. 284, 52 S.Ct. 152, 76 L.Ed. 295 (1932), discusses "jurisdiction," but its primary issue was whether allowing the suit to go forward in state court would

put an undue burden on interstate commerce. *Id.* at 285, 52 S.Ct. 152.[6] The cases cited by Parker do not support the exercise of specific jurisdiction here.

### D. Consent by Registration

Parker argues in the alternative that Norfolk consented to personal jurisdiction over any case filed against it in Missouri by complying with Missouri's foreign corporation registration statutes,[7] obviating the need to meet the criteria for general or specific jurisdiction. In particular, he relies on section 506.150.1(3), which provides in relevant part that service shall be had "[u]pon a domestic or foreign corporation . . . by delivering a copy . . . to any other agent authorized by appointment or required by law to receive service of process," in combination with section 351.594.1, which provides in relevant part that "[t]he registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the foreign corporation." Parker argues that by registering to do business in Missouri and appointing a registered agent, Norfolk consented through the application of these statutes to jurisdiction in Missouri over any cause of action against Norfolk, regardless whether the cause is related to Missouri and whether Missouri otherwise would have jurisdiction over Norfolk in those suits. In support, Parker cites a pair of cases decided in 1917 and 1939, holding that registration constitutes consent.[8]

Norfolk notes, in *Genuine Parts Company v. Cepec*, 137 A.3d 123, 147 n.125 (Del. 2016), Delaware recently held that, as every state requires a foreign corporation doing substantial business in a state to register under the foreign corporation statutes and appoint an agent for service of process, *id.* at 125 n.1, a broad inference of consent based on registration would allow national corporations to be sued in every state, rendering *Daimler* pointless, *id.* at 126.[9]

6.  Even if these cases were applying old concepts of "jurisdiction," the conclusion that FELA provides general jurisdiction over railroad companies any place they have tracks appears to be inconsistent with *Daimler's* rejection of doing business as a basis for jurisdiction.

7.  The foreign corporation registration requirements are in sections 351.574 *et seq.* Some of the key provisions are section 351.572 (prohibiting foreign corporations from doing business in Missouri without obtaining a certificate of authority); section 351.576 (describing the requirements for application for such a certificate); section 351.582 (stating the effects of issuing a certificate of authority: the foreign corporation may do business here, but that authority is revocable, and Missouri cannot regulate internal workings of the foreign corporation); section 351.586 (describing the agent designation requirements); section 351.594 (declaring that service "permitted by law to be served on the foreign corporation" is to be made on the registered agent).

8.  *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Min. & Mill. Co.*, 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610 (1917); *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 175, 60 S.Ct. 153, 84 L.Ed. 167 (1939).

9.  *Accord, Neeley v. Wyeth LLC*, No. 4:11-CV-00325-JAR, 2015 WL 1456984 (E.D. Mo. Mar. 30, 2015); *Keeley v. Pfizer Inc.*, No. 4:15CV00583 ERW, 2015 WL 3999488 (E.D. Mo. July 1, 2015). Norfolk also argues that, in the light of today's global economy, to say that registering to do business is conditioned on implied consent to be sued for unrelated matters likely violates "the unconstitutional conditions doctrine," which "forbids [states from] burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them." *Koontz v. St. Johns River Water Mgmt. Dist.*, —— U.S. ——, 133 S.Ct. 2586, 2595, 186 L.Ed.2d 697 (2013).

Even before *Daimler,* in *Holliger,* 986 S.W.2d at 165–66, this Court noted there was a split of authority as to whether a registration statute constitutionally can require consent to general jurisdiction in order to register to do business in a state. *Id.* at 169 n.4. *Holliger* did not resolve that issue because it was not necessary to do so on the facts of that case.

▬▬ Similarly, here, this Court finds there is no need to determine whether Missouri's registration statutes constitutionally could condition doing business in Missouri on consent to general jurisdiction. The extent of any consent inferred from a registration statute "is a question of interpretation of the instrument in which the consent is expressed and of the statute, if any, in pursuance of which the consent is given." *Restatement (Second) of Conflict of Laws § 44 (1971), comment c.* The plain language of Missouri's registration statutes does not mention consent to personal jurisdiction for unrelated claims, nor does it purport to provide an independent basis for jurisdiction over foreign corporations that register in Missouri. Rather, section 351.594.1 provides the type of service an agent for service of process can receive, stating, "The registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice, or demand *required or permitted by law to be served on the foreign corporation.*" (Emphasis added). That begs the question as to what type of service is required or permitted by law on foreign corporations. Missouri permits service on resident defendants, and on a corporation's agent for service of process, section 506.150.1(3), and Missouri's long-arm statute, section 506.500, permits service on defendants for causes of action arising out of their activities in Missouri, but neither these nor other Missouri statutes provide that suit may be brought in Missouri against non-resident corporations for suits unrelated to the corporation's activities in this state.[10] As section 351.594.1 provides only that registration is consent to service of process that Missouri requires or permits to be served on foreign corporations, the registration statute does not provide an independent basis for broadening Missouri's personal jurisdiction to include suits unrelated to the corporation's forum activities when the usual bases for general jurisdiction are not present. To the extent the holdings or dicta in prior cases suggest otherwise, they go beyond

---

**10.** Prior to 1990, Missouri provided that businesses that did not register to do business in Missouri would nonetheless be considered to have consented to suit in Missouri for torts *arising out of their activities in Missouri.* Section 351.633, RSMo 1978, stated:

> If a foreign corporation commits a tort, excepting libel and slander, *in whole or in part in Missouri* against a resident or non-resident of Missouri, such act shall be deemed to be doing business in Missouri by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of state of Missouri and his successors to be its agent and representative to accept service of any process in any actions or proceedings against the foreign corporation *arising from or growing out of the tort.* . . .

*§ 351.633, RSMo 1978* (emphasis added). Section 351.633 was repealed in 1990 when the legislature overhauled much of chapter 351. *L. 1990 H.B. 1432.* The 1990 changes also moved the sections requiring designation of the agent and service of process on the designated agent to their current enumerations, sections 351.586 and 351.594, respectively, and they have remained relatively unchanged. The requirement of foreign corporations to register and designate an agent to receive service of process dates back to at least 1943. From at least that point, the provision for service has been limited to that "required or permitted by law to be served on a foreign corporation." *L. 1943 p. 465 §§ 103, 105.*

the language of the relevant statutes and should no longer be followed. [11]

## IV. CONCLUSION

For these reasons, the Court concludes the circuit court lacks personal jurisdiction over Norfolk in the underlying personal injury action. The writ is made permanent.

Breckenridge, C.J., Fischer, Draper, Wilson and Russell, JJ., concur.

---

11. *See, e.g., State ex rel. Bloomquist v. Schneider*, 244 S.W.3d 139 (Mo. banc 2008) quoting *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988), for the assumption that a registration statute confers general jurisdiction without examination of whether Missouri's particular language does so; *Gold Issue Min. & Mill. Co. v. Pennsylvania Fire Ins. Co of Philadelphia*, 267 Mo. 524, 184 S.W. 999 (1916), *aff'd*, 243 U.S. at 94, 37 S.Ct. 344 (1917), *overruled in part, State ex rel. American Cent. Life Ins. Co. v. Landwehr*, 318 Mo. 181, 300 S.W. 294 (Mo. banc 1927); *McNichol v. U.S. Mercantile Reporting Agency*, 74 Mo. 457 (Mo. 1881) (interpreting prior version of statute which did not contain language "required or permitted by law to be served on the foreign corporation"). Interestingly, *Gold Issue* is the case that held registration constitutes consent by a foreign insurer to suit even on unrelated causes of action, and it was the case on which certiorari was granted resulting in the Supreme Court's opinion in *Pennsylvania Fire*, holding such a statute is not inherently unconstitutional. *Pennsylvania Fire* made clear it simply accepted Missouri's interpretation of its own statute as allowing such broad jurisdiction over foreign insurers, without independently examining whether that statute actually made registration consent to general jurisdiction. *Id.* But *Gold Issue* specifically was overturned on this precise point by *American Central*, which held that a foreign insurer's registration constituted consent only to suit on related claims. While the latter case was overruled in part on a related issue by *State ex rel. Phoenix Mut. Life Ins. Co. of Hartford v. Harris*, 343 Mo. 252, 121 S.W.2d 141 (1928), its holding that consent was given only to suits growing out of Missouri contracts was reaffirmed. *Id.* at 147.