Lisa White Hardwick, Judge
Jeschke Ag Service, LLC, ("Jeschke") appeals the circuit court's judgment awarding Roger Ross $2,535,000 in economic damages, $250,000 in non-economic damages, and $750,000 in punitive damages for his negligence claim. Jeschke contends the court erred in denying its motion to dismiss for lack of personal jurisdiction, submitting the punitive damages instruction, and denying its motion for new trial because the jury improperly rendered a quotient verdict. For reasons explained herein, we affirm.
FACTUAL AND PROCEDURAL HISTORY
On the morning of March 19, 2014, Donald Shaw, acting in the course and scope of his employment with Jeschke, drove a tractor-trailer rig to St. Joseph to pick up a load of fertilizer. Once the fertilizer was loaded onto Shaw's trailer, the tractor-trailer weighed 81,200 pounds.
After Shaw picked up the fertilizer, he proceeded to drive back to Jeschke's facility in Troy, Kansas. As he drove north on Highway K-7 in Kansas, he rolled up behind Ross, who was also heading north on Highway K-7. Ross was driving his farm tractor with his flashers activated.
The stretch of roadway on which Ross and Shaw were traveling was in a marked no-passing zone. Shaw was familiar with the area because he had driven it several times in the past. He saw the "No Passing" sign as well as the solid yellow line on his side of the road. He also understood that it was dangerous to pass someone in a no-passing zone. Nevertheless, Shaw pulled into the southbound lane of Highway K-7 on Ross's left side just as Ross was attempting to turn left onto an intersecting street.
Shaw struck Ross as Ross was turning. The force of the impact caused Ross to be ejected from the tractor. The tractor eventually came to rest in a yard, while Shaw's tractor-trailer entered a ditch and came to rest in a field.
Ross was transported from the scene to the hospital. He suffered serious injuries, including brain damage. Ross does not recall anything about the accident. Shaw was not injured.
Ross and his wife filed a petition for actual and punitive damages against Jeschke and Shaw in the Circuit Court of Jackson County, Missouri. While the case was pending, the court determined that Kansas substantive law should be applied. Ross subsequently filed an amended petition excluding his wife's claim.
Before the jury trial began, Ross dismissed his claims against Shaw without prejudice. At the conclusion of the trial, the jury assessed 65% of the fault for the accident to Jeschke and 35% to Ross. The jury determined that Ross's past and future economic damages were $3.9 million and his past and future non-economic damages were $2.4 million. The jury also found that Jeschke was liable for punitive damages.
*722 The court indicated that it would schedule a hearing at a later date to determine the amount of punitive damages.
A couple of months later, the court heard additional evidence regarding punitive damages and then entered final judgment. After reducing the jury's award by Ross's percentage of fault and applying Kansas's non-economic damages cap, the court awarded Ross $2,535,000 in economic damages and $250,000 in non-economic damages. The court also awarded Ross $750,000 in punitive damages. Jeschke appeals.
ANALYSIS
Point I-Personal Jurisdiction
In Point I, Jeschke contends the court erred in denying its motion to dismiss for lack of personal jurisdiction. Whether there is sufficient evidence to make a prima facie showing of personal jurisdiction is a question of law that this court reviews de novo. Bryant v. Smith Interior Design Group, Inc. , 310 S.W.3d 227, 231 (Mo. banc 2010).
After Ross filed his petition in Jackson County, Jeschke filed a motion to dismiss for lack of personal jurisdiction. In its motion, Jeschke alleged that it was not subject to personal jurisdiction in Missouri because the accident occurred in Kansas; Ross and Shaw are both Kansas residents; and Jeschke is a Kansas LLC that is not licensed to do business in Missouri, does not have a registered agent in Missouri, and does not have an office for the transaction of business in Missouri. The court denied Jeschke's motion. During trial, Jeschke renewed its challenge to the court's assertion of personal jurisdiction in its motions for directed verdict at the close of plaintiff's evidence and at the close of all the evidence. The court denied those motions.
After the jury trial, Jeschke filed a motion for new trial or to amend the judgment. In this motion, however, Jeschke did not allege that the court lacked personal jurisdiction over it. Rule 78.07(a) requires that all allegations of error, except those involving questions of subject matter jurisdiction, questions presented in motions for judgment notwithstanding the verdict, and questions relating to motions for directed verdict that are granted at trial, must be included in a motion for new trial to be preserved for appellate review.
Jeschke did file a motion for judgment notwithstanding the verdict that included a challenge to the court's exercise of personal jurisdiction. However, Jeschke filed this motion, along with a motion for new trial and a motion to amend the judgment, before the court held its hearing on punitive damages and entered its final judgment. The court struck all of these motions as premature and specifically stated that the motions would not be considered by the court. Although Jeschke filed another motion for new trial or, alternatively, to amend the judgment after the court entered its final judgment, Jeschke did not file another motion for judgment notwithstanding the verdict.
Hence, Jeschke's challenge to the court's exercise of personal jurisdiction must have been included in its motion for new trial to be preserved for our review. Williams v. Thompson , 489 S.W.3d 823, 828 (Mo. App. 2015). Jeschke not only failed to include its claim that the court lacked personal jurisdiction in its motion for new trial, but Jeschke stated in the motion that the court did, in fact, have personal jurisdiction. In a footnote on the first page of its motion for new trial, Jeschke stated, "Brent Jeschke, one of Jeschke's owners, and Shaw were personally served with process in Missouri, so this Court has personal jurisdiction to hear this Kansas case. " (Emphasis added.) "[B]ecause personal jurisdiction is an individual right, a defendant may waive jurisdictional *723 objections by consenting to personal jurisdiction." State ex rel. Norfolk S. Railway Co. v. Dolan , 512 S.W.3d 41, 46 (Mo. banc 2017). Jeschke waived its claim that the court lacked personal jurisdiction.[1] Point I is denied.
Point II-Punitive Damages
In Point II, Jeschke challenges the circuit court's award of punitive damages on several grounds.[2] First, Jeschke contends the court erred in submitting prejudicially erroneous jury instructions that misdirected, misled, or confused the jury to award punitive damages during the compensatory damages phase. Specifically, Jeschke argues that the instructions failed to apprise the jury of the bifurcated nature of the trial, i.e. , that there would be a second stage of the trial during which, pursuant to Kansas law, the court would decide the amount of punitive damages to award. Jeschke also argues that the instructions failed to sufficiently explain that compensatory damages do not include punitive damages.
As Ross correctly points out, Jeschke did not object to the jury instructions on any of these bases at trial. Rule 70.03 provides that "[n]o party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." "Timely objections [to an instruction] are required as a condition precedent to appellate review in order to afford the trial court an opportunity to correct any mistakes immediately and inexpensively without risking the delay and expense of an appeal and a retrial." Howard v. City of Kansas City , 332 S.W.3d 772, 790 (Mo. banc 2011) (citation omitted). Because Jeschke failed to object to the instructions on these grounds at trial, it has not preserved these claims of error for appellate review. Id.
Second, Jeschke contends the court erred in denying its motion for a directed verdict at the close of all the evidence because Ross failed to make a submissible claim for punitive damages. In response, Ross asserts that Jeschke failed to preserve any challenge to the submissibility of his punitive damages claim by not raising it in a motion for judgment notwithstanding the verdict. To preserve a challenge to the submissibility of the plaintiff's case, the defendant must first include it as a claim of error in a motion for directed verdict at the close of the plaintiff's evidence, renew the claim of error in a motion for directed verdict at the close of all the evidence, and then include the claim of error in a timely motion for judgment notwithstanding the verdict filed after the court enters its judgment. Newsome v. Kansas City, MO Sch. Dist. , 520 S.W.3d 769, 775 n.2 (Mo. banc 2017) ; Sanders v. Ahmed , 364 S.W.3d 195, 207-08 (Mo. banc 2012) ; Rule 72.01(a)-(b).
Jeschke challenged the submissibility of Ross's punitive damages claim in its motions for directed verdict filed at the close of Ross's case and at the close of all the evidence. Jeschke asserts that it also included *724 the claim of error in its motion for judgment notwithstanding the verdict, which it filed before the court held its hearing on punitive damages and entered its final judgment. As we stated supra , however, the court struck Jeschke's motion for judgment notwithstanding the verdict as premature and advised the parties that the motion would not be considered by the court. In its reply brief, Jeschke relies solely on this stricken motion for judgment notwithstanding the verdict to support its assertion that its challenge to the submissibility of Ross's punitive damages claim was preserved. Jeschke does not acknowledge that the court struck the motion or that the court specifically stated that the motion would not be considered.
Jeschke did not file another motion for judgment notwithstanding the verdict after the court entered its final judgment. Therefore, pursuant to Newsome and Sanders , Jeschke failed to preserve its challenge to the submissibility of Ross's punitive damages claim by not including it in a properly-filed motion for judgment notwithstanding the verdict.
Alleging the same deficiencies in the evidence concerning punitive damages as it alleged to support its submissibility challenge, Jeschke also argues in this point that the court erred in submitting the punitive damages instruction to the jury because the evidence was insufficient to support it. Although labeled as instructional error, this is another challenge to the submissibility of Ross's punitive damages claim. As such, it must have been preserved pursuant to Rule 72.01 by including it in a motion for judgment notwithstanding the verdict. See Howard , 332 S.W.3d at 789-91 (stating that, to the extent that a point relied on alleging that the court erred in instructing the jury on future damages because future damages were not supported by the evidence challenged submissibility, the claim of error was not preserved, as the defendant had not argued against the submissibility of future damages in a motion for directed verdict pursuant to Rule 72.01(a) ). Point II is denied.
Point III-Alleged Juror Misconduct
In Point III, Jeschke alleges the circuit court erred in denying its motion for new trial based on juror misconduct. We will not disturb the court's ruling on such a motion unless we find that the court abused its discretion. Smotherman v. Cass Reg'l Med. Ctr. , 499 S.W.3d 709, 712 (Mo. banc 2016). An abuse of discretion occurs when the ruling "is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Id.
Jeschke alleges the jurors committed misconduct by rendering a quotient verdict. "The law in Missouri respecting quotient verdicts is well settled." Jones v. Midwest Pre Cote Co. , 412 S.W.2d 468, 471 (Mo. 1967). A quotient verdict, which is "a verdict arrived at by a prearranged agreement among the jurors to be bound by the result of the averaging of the individual estimate of the jurors, amounts to misconduct on the part of the jury and such a verdict should not be permitted to stand." Id. "[T]o establish a verdict as a quotient verdict it must be shown that there was a prearranged agreement among the jurors to accept the unknown and unascertained quotient as their verdict." Id. (emphasis added). Indeed, prearrangement is "the central element of the quotient verdict." Boquist v. Montgomery Ward & Co. , 516 S.W.2d 769, 777 (Mo. App. 1974), overruled on other grounds by Sanders v. Daniel Int'l Corp. , 682 S.W.2d 803 (Mo. banc 1984). "[T]he presumption is that there was no such prearrangement among the jurors." Jones , 412 S.W.2d at 471. "[B]efore a verdict can be deemed a quotient verdict there must be strong evidence that *725 prior to the calculations ultimately resulting in the award the jury agreed to be bound by the total." Boquist , 516 S.W.2d at 778. Furthermore, "if the jurors have not bound themselves beforehand to accept the unascertained quotient as their verdict, but after the quotient is ascertained it is then adopted as their verdict, the fact that they used that method of reaching an agreement will not invalidate their verdict." Jones , 412 S.W.2d at 471.
To support its claim that the jurors in this case delivered a prearranged quotient verdict, Jeschke relies on the affidavit and testimony of Charles Cooper, the jury foreperson. In his affidavit, Cooper stated that, during deliberations, the jurors averaged their opinions on the respective parties' fault and the amount of damages by setting out the numbers and dividing them by the number of jurors. In a hearing that the court held regarding the alleged juror misconduct, Cooper testified that what he stated in his affidavit was accurate. He added that, before arriving at percentages of fault, the jurors "discussed first what the actual fault was, trying to stay in compliance with the guidance provided to [them] from the court." Cooper repeatedly denied that the jurors had a prearranged agreement to reach a verdict by totaling each juror's opinion of percentages of fault and damages and dividing those numbers by 12. When Jeschke's counsel asked him if the jurors had this type of agreement "at the outset," Cooper responded:
[W]hen you make the statement an agreement before, there was no agreement. What we read was the jury instructions that we had before us. That's what we attempted to apply to the process. We didn't sit up and go-or to the best of my knowledge, we're simply going to add everything up, average it out, and give what we're going to give.
Later, Cooper again explained the process the jurors followed in their deliberations and reiterated that they had no prearranged agreement to render a quotient verdict:
It's as if we are to absorb the factual evidence that we have been presented with and those are the evidence we were supposed to take, and we go up in the deliberation room, and at that point, then we start to expound on those.
So there was no preconceived conversing, conversations that indicated by any means that we were going to do something a certain way, i.e., we're going to set this thing up and we're going to do the percentages and what have you.
Cooper's affidavit and testimony showed that the jurors in this case did not have a prearranged agreement to be bound by the average of their opinions of fault percentages or damages amounts. That they may have used this method to arrive at a verdict after discussing the evidence and applying the instructions to the evidence does not invalidate their verdict. Id. Because Jeschke failed to present strong evidence that the jurors had a prearranged agreement to be bound by a quotient verdict, the circuit court did not abuse its discretion in denying Jeschke's motion for new trial. Point III is denied.
CONCLUSION
We affirm the circuit court's judgment.
All Concur.

Citing Bueneman v. Zykan , 52 S.W.3d 49, 58-59 (Mo. App. 2001), Jeschke argues that a judgment issued with no personal jurisdiction is void ab initio and remains forever void; hence, it can be attacked at any time. Unlike in this case, however, Bueneman involved a default judgment, and the defendants never waived their jurisdictional objections by consenting to personal jurisdiction.

We agree with Ross that Jeschke's Point II is multifarious because it contains more than one basis for reversal. Peters v. Johns , 489 S.W.3d 262, 268 n.8 (Mo. banc 2016). "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." Id. Nevertheless, we exercise our discretion to review this defective point ex gratia. Id.