

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI ex rel.      )
CEDAR CREST APARTMENTS, LLC      )
and PETERSON PROPERTIES, INC.      )
d/b/a THE PETERSON COMPANIES,      )
     )
         Relators,      )
     )
v.      )      No. SC96977
     )
THE HONORABLE      )
JACK GRATE,      )
     )
         Respondent.      )

*Opinion issued July 16, 2019*

## ORIGINAL PROCEEDING IN PROHIBITION

Lincoln Rene Aguiriano Martinez ("Martinez") filed a lawsuit in the circuit court of Jackson County, alleging personal injury sustained while working at an apartment complex in Overland Park, Kansas. Two of the defendants, Cedar Crest Apartments, LLC ("Cedar Crest"), and Peterson Properties, Inc. d/b/a The Peterson Companies ("Peterson Properties," and, collectively with Cedar Crest, "Relators"), are Kansas business entities. Relators seek a writ of prohibition directing the circuit court to dismiss Martinez's claims against them for lack of personal jurisdiction. Because Martinez failed to show that Relators are "at home" in Missouri and failed to identify any conduct by

Relators in this state out of which his claims arise, the preliminary writ of prohibition is now made permanent.

## Background

On August 31, 2015, Martinez, a Kansas resident, alleges he was working at an apartment complex in Overland Park, Kansas. He was electrocuted and seriously injured when he touched a ladder that had become charged due to arcing from or contact with an overhead power line. On August 25, 2017, Martinez filed a lawsuit for damages in the circuit court of Jackson County.

Martinez alleges Relators "owned and/or controlled and/or maintained" the Kansas property on which he was injured and, therefore, are liable to him under various theories including premises liability. Relators are Kansas business entities,[1] with Kansas employees, and their principal places of business are in Kansas. Nevertheless, Martinez claims Peterson Properties has been registered to do business in Missouri since 1979, that it has solicited business here during that period, that it has filed (unrelated) lawsuits in this state, and that it owns (unrelated) rental property here.

Martinez also named as a defendant J.A. Peterson Enterprises, Inc. ("Peterson Enterprises"). Peterson Enterprises is a Missouri corporation, it is the managing member of Cedar Crest, and it owns (through a subsidiary) Peterson Properties.

---

[1] Martinez argues Cedar Crest is a "citizen of Missouri" because it is a limited liability company ("LLC") and, for purposes of determining federal diversity jurisdiction, the citizenship of an LLC is determined by the citizenship of each of its members. Diversity jurisdiction is a topic peculiar to the subject matter jurisdiction of the federal courts. Martinez offers no support for his assertion that the membership of an LLC has any bearing on the question of whether a state court can assert personal jurisdiction over the LLC itself, and the Court rejects this argument.

Relators filed a motion to dismiss on the ground the circuit court lacked personal jurisdiction over them. Respondent overruled Relators' motion. Relators sought – and were denied – a writ of prohibition in the court of appeals and now petition this Court for the same relief. This Court has the authority to issue and determine original remedial writs, Mo. Const. art. V, § 4.1, and the preliminary writ is now made permanent.

**Analysis**

"Prohibition is an original proceeding brought to confine a lower court to the proper exercise of its jurisdiction." *State ex rel. Bayer Corp. v. Moriarty*, 536 S.W.3d 227, 230 (Mo. banc 2017) (quotation omitted). In particular, "[p]rohibition is the proper remedy to prevent further action of the trial court where personal jurisdiction of the defendant is lacking." *State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 45 (Mo. banc 2017) (quotation omitted). "However, prohibition is only proper when usurpation of jurisdiction is clearly evident." *Id.* (quotation and alteration omitted).

"Personal jurisdiction refers quite simply to the power of a court to require a person to respond to a legal proceeding that may affect the person's rights or interests." *Bayer*, 536 S.W.3d at 230-31 (quotation and alteration omitted). To exercise personal jurisdiction over a non-resident corporation, such an assertion of jurisdiction must be authorized by Missouri's long-arm statute, § 506.500, RSMo 2016, and it must not offend due process. "It is a due process requirement limiting the power of courts over litigants." *Id.* at 231. Due process is satisfied when a court possesses "general – that is, all-purpose jurisdiction" – or "specific – that is, conduct-linked jurisdiction." *Norfolk*, 512 S.W.3d at 46 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 121-22 (2014)).

3

**General Jurisdiction**

"When a [s]tate exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the [s]tate has been said to be exercising 'general jurisdiction' over the defendant." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984)). "A court normally can exercise general jurisdiction over a corporation only when the corporation's place of incorporation or its principal place of business is in the forum state." *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Daimler*, 571 U.S. at 126-27).

However, "[i]n 'exceptional cases,' general jurisdiction may exist in an additional state if the corporation's activities in that other state are 'so substantial and of such a nature as to render the corporation at home in that [s]tate.'" *Id.* (quoting *Daimler*, 571 U.S. at 139 n.19). The Supreme Court's decision in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) – in which general jurisdiction was found to exist in Ohio state court over a Philippine mining company that conducted business out of necessity from an office in Ohio during the Japanese occupation of the Philippines during World War II – "remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." *Goodyear*, 564 U.S. at 928 (quotation and alteration omitted).

Relators are Kansas business entities with their principal places of business in Kansas. As a result, the traditional bases for general jurisdiction are lacking. Nevertheless, Martinez argues Relators are "at home" in Missouri to such an extent that

4

they are subject to the general jurisdiction of Missouri courts, i.e., that Relators can be sued in this state by anyone on any claim no matter where or how such claims arose. In support of this argument, Martinez claims Relators have had "systematic and continuous" contacts in Missouri because one or both Relators is registered to do business here, has solicited business here, has filed (unrelated) lawsuits in this state, and owns rental property here. But these are typical contacts of a non-resident corporation. As such, they fall far, far short of establishing the "exceptional case" for general jurisdiction over a non-resident corporation that is "at home" in Missouri. *Daimler*, 571 U.S. at 126-27.

In *Norfolk*, this Court held a railway company that owned some 400 miles of track, generated approximately $232 million in yearly revenue, and employed some 590 people in Missouri was not "essentially at home" in Missouri. *Norfolk*, 512 S.W.3d at 47-48. The Court noted that "at home" is not synonymous with "doing business," and, when "a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how systematic and continuous, are extraordinarily unlikely to add up to an exceptional case." *Id.* at 48 (quotation omitted). Relators' contacts with Missouri do not rise to – let alone surpass – the level of those rejected as insufficient in *Norfolk*. Accordingly, there is no basis to find that Missouri is a "surrogate for place of incorporation or home office" for either Relator. *Id*

### Specific Jurisdiction

Even if general jurisdiction is lacking because Missouri is not the *de facto* domicile of the defendant under *Daimler* and *Norfolk*, Missouri courts may still assert personal jurisdiction over a non-domiciliary defendant corporation without violating due

5

process if that entity has at least one contact with this state *and* the cause of action being pursued arises out of that contact. *Id.* at 48-49; *Daimler*, 571 U.S. at 127. This contact-based jurisdiction is referred to as specific jurisdiction.

Martinez argues the trial court has specific jurisdiction over his claims against Relators based, in part, on the same contacts analyzed above (e.g., registering to do business in Missouri, soliciting business here, filing lawsuits here, and owning rental property here). The Court already has held that these contacts are insufficient to establish general jurisdiction. Similarly, these contacts are insufficient to establish specific jurisdiction because Martinez fails to show any connection between these contacts and his claims, far less that his claims against Relators arise out of those contacts.[2] *Bayer*, 536 S.W.3d at 233 (no specific jurisdiction when there is no "affiliation between the forum and the underlying controversy") (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1780 (2017)).

---

[2] In seeking to establish specific jurisdiction, Martinez invokes the hoary notion of "purposeful availment," i.e., that Relators (particularly Cedar Crest) utilized Missouri courts in the past by filing unrelated lawsuits and, so, should expect to be hailed into Missouri courts to defend Martinez's claims. To be sure, "purposeful availment" traditionally has been referred to in the context of specific jurisdiction, *see, e.g., Goodyear*, 564 U.S. at 924, but there is considerable doubt as to what relevance – if any – this concept retains in light of *Bristol-Myers Squibb*. There, the majority of the Supreme Court – over Justice Sotomayor's lone dissent – conspicuously omitted any discussion of "purposeful availment" in its specific jurisdiction analysis. *Compare Bristol-Myers Squibb*, 137 S. Ct. at 1777-84, with *id.* at 1784-89 (Sotomayor, J., dissenting). Even if the light of "purposeful availment" has not yet been fully extinguished, there can be no question that every assertion of specific jurisdiction must rest upon a showing that: (1) the defendant had at least one contact with the forum state, and (2) the claim being asserted against that defendant arose out of that contact. *Bristol-Myers Squibb*, 137 S. Ct. at 1780. Martinez failed to make that showing in this case.

Because Relators' contacts with Missouri are insufficient to make Missouri their *de facto* domicile (and, therefore, to subject Relators to the general jurisdiction of Missouri courts), and because those contacts are insufficient to establish specific jurisdiction because Martinez's claims against Relators do not arise out of those contacts, Martinez argues the circuit court has personal jurisdiction over Relators because of their relationship with Missouri defendant Peterson Enterprises. Martinez claims Peterson Enterprises is the (indirect) owner of Peterson Properties and the managing member of Cedar Crest and, in those roles, "makes business decisions" for both Relators. In essence, Martinez argues that – because Peterson Enterprises is a Missouri corporation and Relators are, as a practical matter, mere extensions of Peterson Enterprises – Relators should be subject to general jurisdiction (as Peterson Enterprises is) and specific jurisdiction (as Martinez's claims ultimately arise out of decisions Peterson Enterprises made or should have made).

"A corporation can act only through its agents." *Piatt v. Ind. Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 794 (Mo. banc 2015). As a result, a personal jurisdiction analysis will involve (though, usually, only implicitly) imputing the contacts of a defendant corporation's agent(s) to that corporation. *See, e.g., Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 5 (Mo. banc 1997) (per curiam) (imputing Missouri contacts of president and sole shareholder of Ohio corporation to that corporation for purposes of analyzing personal jurisdiction over the foreign corporation); § 506.500.1 (long-arm statute expressly states jurisdictional acts can be performed "in person or through an agent"). But one corporation does not become the agent of another

7

corporation merely because it is owned by the other. *State ex rel. Ford Motor Co. v. Bacon*, 63 S.W.3d 641, 642 (Mo. banc 2002). *See, e.g., Daimler*, 571 U.S. at 135-36 (declining to impute forum state contacts of subsidiary to foreign corporate parent merely because the former performed "important" tasks for the latter).[3] Martinez failed to plead (let alone prove) facts sufficient to show that this is one of the extraordinary cases and that one or both Relators are the agent of Peterson Enterprises for purposes of general or specific jurisdiction.[4]

But there is an even more fundamental flaw in Martinez's imputation argument. As noted above, in a proper case, the Missouri contacts of an agent can be imputed to an out-of-state principal for purposes of determining whether Missouri courts have general or specific jurisdiction over that out-of-state principal. But that is not the argument Martinez is making. Instead, Martinez would have this Court impute the Missouri contacts of the principal (Peterson Enterprises) to its out-of-state agents (Relators) for purposes of determining whether Missouri courts have general or specific jurisdiction over those out-of-state agents. Martinez offers no support for this novel argument, and the Court declines to adopt it here.

---

[3] Even if contacts sufficient to show a subsidiary agent is subject to general jurisdiction are imputed to the parent principal, *Daimler* holds that general jurisdiction over the parent cannot exist unless its own contacts with the forum state are sufficient to create it. *Daimler*, 571 U.S. at 137-39.

[4] Martinez failed to show, and does not even argue, that Peterson Enterprises and Relators are alter egos of each or that there is any other basis for disregarding the corporate structure entirely under the merger doctrine.

In sum, this Court declines to hold that Relators are subject to personal jurisdiction in Missouri courts merely because their corporate parent or managing member is domiciled here. Rather, each Relator's contacts with Missouri must be sufficient to create general or specific jurisdiction on their own. *Daimler*, 571 U.S. at 137-38; *Bristol-Myers Squibb*, 137 S. Ct. at 1783. Here, Relators' contacts fall well short of either standard.[5]

---

[5] Finally, if Martinez fails on the merits of his jurisdictional arguments (as the Court holds he does), he asks the Court to quash the preliminary writ nonetheless so he can conduct jurisdiction-related discovery. A court evaluates personal jurisdiction by considering the allegations contained in the pleadings to determine whether, if taken as true, they establish facts adequate to invoke Missouri's long-arm statute and support a finding of minimum contacts with Missouri sufficient to satisfy due process. *Angoff v. Marion A. Allen, Inc.,* 39 S.W.3d 483, 487 (Mo. banc 2001). When the defendant contests personal jurisdiction, however, it is the plaintiff who bears the burden of establishing the defendant's contacts with the forum state are sufficient. *Id.* at 486. Thus, when the defendant presents evidence refuting personal jurisdiction, the plaintiff must respond with contrary evidence or otherwise refute the evidence presented by the defendant as opposed to merely relying on his or her pleadings. *See Chromalloy Am. Corp.*, 955 S.W.2d at 3-4. Here, Relators contested personal jurisdiction and presented the affidavit of James Peterson, the president of Peterson Properties and Peterson Enterprises, in support of that challenge. Because Relators set forth evidence contesting personal jurisdiction, Martinez cannot rely solely on his pleadings. *See id.* But, even if he could, Martinez's pleadings do not assist him because he fails to allege facts in support of personal jurisdiction over Relators. Martinez alleges mere boilerplate allegations and legal conclusions (e.g., "Defendants conduct business within the State of Missouri, make contracts within the State of Missouri, make contracts with citizens of the State of Missouri, and/or solicit customers in and from Missouri, constituting the transaction of business in Missouri."). Notwithstanding that these statements make no allegations regarding Relators individually – but instead refer to "Defendants" as a whole, which include various Missouri corporations and residents as well as Relators, Kansas business entities – Martinez's pleadings fail as a matter of law to establish personal jurisdiction. Accordingly, Martinez is not entitled to jurisdiction-related discovery.

**Conclusion**

For the reasons set forth above, the preliminary writ of prohibition is now made permanent.

_____
Paul C. Wilson, Judge

Russell, Powell, Breckenridge and Fischer, JJ., concur;
Draper, C.J., concurs in separate opinion filed.
Stith, J., concurs in opinion of Draper, C.J.



STATE OF MISSOURI ex rel.   )
CEDAR CREST APARTMENTS, LLC )
and PETERSON PROPERTIES, INC. )
d/b/a THE PETERSON COMPANIES, )
             )
   Relators,     )
             )
v.            )  No. SC96977
             )
THE HONORABLE     )
JACK GRATE,      )
             )
   Respondent.    )

## CONCURRING OPINION

I concur with the principal opinion's analysis and result. However, I write separately because I believe the principal opinion does not address fully Lincoln Rene Aquiriano Martinez's (hereinafter, "Martinez") argument regarding J.A. Peterson Enterprises, Inc.'s (hereinafter, "Peterson Enterprises") ownership of Cedar Crest Apartments, LLC and Peterson Properties, Inc. d/b/a The Peterson Companies (hereinafter and collectively, "Relators"). While the principal opinion views Martinez's argument as imputing agency, I view it as a request to pierce the corporate veil. Ultimately, Martinez is not entitled to relief under either theory.

Martinez asserts general jurisdiction should be found because Peterson Enterprises, a Missouri business entity, is a managing member of Cedar Crest and the ultimate *owner*, not the agent, of Peterson Properties. Martinez believes this confers general personal jurisdiction.[1]

A "corporation is regarded as a wholly and separate legal entity, distinct from the members who compose it." *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 375 (Mo. App. E.D. 2014) (quoting *Thomas Berkeley Consulting Eng'r, Inc. v. Zerman,* 911 S.W.2d 692, 695 (Mo. App. E.D. 1995)). "[O]rdinarily two separate corporations are to be regarded as wholly distinct legal entities, even though the stock of the one is owned partly or entirely by the other." *Cent. Cooling & Supply Co. v. Dir. of Revenue*, 648 S.W.2d 546, 548 (Mo. 1982). Yet, there is an exception for piercing the corporate veil when one corporation exercises such dominion and control over the other corporation such that it creates an alter ego for the principal corporation. *Id.*; *Blum v. Airport Terminal Servs., Inc.*, 762 S.W.2d 67, 72 (Mo. App. E.D. 1988).[2] The corporate veil may be pierced only if three factors are met:

---

[1] While Martinez specifically does not refer to the concept of jurisdictional piercing the corporate veil, I believe it is clear he presented written and oral arguments in support of this concept to reach jurisdiction in Missouri.

[2] Although this concept has not been applied in Missouri, this Court is not precluded from discussing it when the parties present the concept to this Court in their analysis and argument. This piercing concept for purposes of jurisdiction *is* applied in other states. *See PHC - Minden, L.P. v. Kimberly - Clark Corp.,* 235 S.W.3d 163, 175 (Tex. 2007); *PanAmerican Mineral Servs., Inc. v. KLS Enviro Res., Inc.*, 916 P.2d 986, 990-91 (Wyo. 1996). While there is no doubt the due process considerations of *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014), and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) still must be adhered to, there is current scholarly interest in this topic. *See* King Fung Tsang,

2

1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

2) Such control must have been used by the corporation to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and

3) The control and breach of duty must proximately cause the injury or unjust loss complained of.

*Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 18 (Mo. banc 2013) (emphasis omitted) (quoting *66, Inc. v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32, 40 (Mo. banc 1999)).

Martinez's assertion Relators should be held liable due to Peterson Enterprises' subsidiary relationship fails at the first factor. There was no allegation demonstrating Peterson Enterprises' ownership or how Peterson Enterprise dominated Relators' corporate structure. There was no allegation showing Peterson Enterprises directed Relators' conduct nor that Relators acted in favor of Peterson Enterprises' interests. "One seeking to pierce the corporate veil needs to show both complete control and improper purpose." *Blanks*, 450 S.W.3d at 376. Martinez's allegations are insufficient to show Peterson Enterprises exercised complete control over Relators or demonstrate an

*The Elephant in the Room: An Empirical Study of Piercing the Corporate Veil in the Jurisdictional Context*, 12 Hastings Bus. L.J. 185, 185-87 (2016); Jennifer A. Schwartz, *Piercing the Corporate Veil of an Alien Parent for Jurisdictional Purposes: A Proposal for a Standard That Comports with Due Process*, 96 Cal. L. Rev. 731, 734 (2008).

improper purpose.  Accordingly, I concur in the principal opinion to make the writ permanent.

_____
GEORGE W. DRAPER III, CHIEF JUSTICE