

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| CREATIVE COMPOUNDS, LLC, | ) | No. ED111095 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | Cape Girardeau County |
| vs. | ) | |
| | ) | Honorable Benjamin F. Lewis |
| THERMOLIFE INTERNATIONAL, LLC, | ) | |
| | ) | |
| Respondent. | ) | Filed: May 23, 2023 |

### Introduction

Creative Compounds, LLC ("Creative") appeals the Circuit Court of Cape Girardeau County's judgment granting ThermoLife International, LLC's ("ThermoLife") motion to dismiss for lack of personal jurisdiction. In its sole point on appeal, Creative argues the trial court erred in dismissing the case for lack of personal jurisdiction because ThermoLife's tortious conduct was directed at and injured Creative in Missouri, subjecting ThermoLife to the personal jurisdiction of this state.

Because Creative did not satisfactorily plead ThermoLife committed the tort of tortious interference with contract or business expectancy or injurious falsehood in Missouri, Creative did not adequately plead facts establishing personal jurisdiction over ThermoLife. We deny Creative's point on appeal.

We affirm.

## Factual and Procedural Background

Creative sources and sells bulk raw ingredients to the food industry, specifically the sports nutrition and dietary supplement industries. One ingredient Creative sells customers is NitroRocket®, a specially engineered extract of arugula developed for the sports nutrition and nutraceutical industries. WG Nutrition is one of Creative's customers who purchase NitroRocket®. Multiple Creative customers, including WG Nutrition, told Creative they received letters and emails from ThermoLife threatening to sue, alleging the incorporation of NitroRocket® into their products infringed on "rights" owned by ThermoLife. Creative alleges before ThermoLife sent its threatening letters and emails to its customers, ThermoLife's prior counsel admitted to Creative's representative on September 4, 2018, that neither NitroRocket® by itself nor including NitroRocket® into a product marketed, offered for sale, and/or sold to consumers violated any rights owned by ThermoLife. Creative also alleges the threatening letters and emails caused WG Nutrition to terminate its agreement with Creative to purchase NitroRocket®.

On July 27, 2021, Creative filed its petition against ThermoLife. Following other motions, the trial court granted ThermoLife leave to file a motion to dismiss Creative's petition. After a hearing on the motion in June 2022, the trial court dismissed Creative's petition with leave to file an amended petition. On July 6, 2022, Creative filed its first amended petition alleging tortious interference with a contract or business expectancy, Count I, and injurious falsehood, Count II. On August 8, 2022, ThermoLife filed its motion to dismiss with prejudice the amended petition asserting lack of personal jurisdiction and failure to state a claim. On October 6, 2022, the trial court held a hearing on the motion to dismiss. On October 17, 2022,

the trial court dismissed with prejudice Creative's first amended petition for lack of personal jurisdiction.

This appeal follows.

**Standard of Review**

The plaintiff has the burden to show the trial court's exercise of jurisdiction is proper when a defendant raises the issue of personal jurisdiction in a motion to dismiss. *Babb v. Bartlett*, 638 S.W.3d 97, 104 (Mo. App. E.D. 2021) (quoting *Consol. Elec. & Mechs., Inc. v. Schuerman*, 185 S.W.3d 773, 775 (Mo. App. E.D. 2006)). "Whether a plaintiff has presented sufficient evidence to establish a *prima facie* case of personal jurisdiction over a defendant is a question of law that we review on appeal *de novo*." *Id.* (citing *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 231 (Mo. banc 2010)). In reviewing the grant of a motion to dismiss a petition, "all facts in the petition are deemed true and the plaintiff is given the benefit of all reasonable inferences." *Id.* (citing *Bryant*, 310 S.W.3d at 231). "A reviewing court evaluates personal jurisdiction by considering the allegations contained in the pleadings to determine whether, if taken as true, they establish facts adequate to invoke Missouri's long-arm statute and support a finding of minimum contacts with Missouri sufficient to satisfy due process." *Id.* (quoting *Bryant*, 310 S.W.3d at 231). As in this case, if a motion to dismiss for lack of jurisdiction is based on facts not appearing in the record, "the trial court may hear it on affidavits presented by the parties, or the court may direct that the matter be heard wholly or partly on oral testimony or deposition." *Id.* (quoting *Lindley v. Midwest Pulmonary Consultants, P.C.*, 55 S.W.3d 906, 909 (Mo. App. W.D. 2001)).

"This standard of review does not convert the motion to dismiss into a motion for summary judgment as 'the trial court's inquiry is limited to an examination of the petition on its

face and the supporting affidavits to determine the limited question of personal jurisdiction.'" *Lindley*, 55 S.W.3d at 909–10 (quoting *Cap. Indem. Corp. v. Citizens Nat'l Bank*, 8 S.W.3d 893, 898 (Mo. App. W.D. 2000)); *see also Consolidated Elec. & Mechs., Inc. v. Schuerman*, 185 S.W.3d 773, 776 n.1 (Mo. App. E.D. 2006). "The merits of the underlying action are not considered." *Lindley*, 55 S.W.3d at 910 (quoting *Cap. Indem. Corp.*, 8 S.W.3d at 898).

**Discussion**

A. Party Positions

Creative argues the trial court erred in dismissing the case for lack of personal jurisdiction because ThermoLife's tortious conduct was directed at and injured Creative in Missouri, subjecting ThermoLife to the personal jurisdiction of this state. Creative contends extraterritorial tortious conduct, like ThermoLife's, may support personal jurisdiction under Missouri's long-arm statute. *Bryant*, 310 S.W.3d at 232; *see also State ex rel. Key Ins. Co. v. Roldan*, 587 S.W.3d 638, 641 (Mo. banc 2019); *Brovont v. KS-I Med. Servs., P.A.*, 622 S.W.3d 671, 685 (Mo. App. W.D. 2020). Creative argues in Missouri, "a single tortious act is sufficient to support personal jurisdiction consistent with due process standards." *Brovant*, 622 S.W.3d at 686 (quoting *Roldan*, 587 S.W.3d at 643) (emphasis removed). Creative asserts ThermoLife threatened to sue Creative and its customers if those customers did not stop purchasing NitroRocket® from Creative. Creative argues because of ThermoLife's tortious acts, "at least one customer terminated its agreement with [Creative] to purchase NitroRocket®."

ThermoLife argues the trial court did not err in dismissing the case because Creative's first amended petition failed to establish personal jurisdiction over ThermoLife. Specifically, ThermoLife contends the first amended petition alleged no facts supporting the Missouri long-arm statute attaching, or any facts satisfying due process requirements. ThermoLife argues the

4

first amended petition provides no allegations ThermoLife published any false statement in the state or engaged in any other activity in Missouri. ThermoLife contends Creative's first amended petition "does not identify specific facts and statements to satisfy its assertion of 'negative consequences.'" Additionally, ThermoLife asserts even if the long-arm statute were satisfied, Creative did not show due process was satisfied. ThermoLife states Creative "made no effort to explain how the five factors support its due process argument." ThermoLife argues even after a consideration of the relevant factors, dismissing the case is proper.

Finally, ThermoLife argues even if this Court concludes ThermoLife is subject to personal jurisdiction in Missouri, we should affirm the trial court's dismissal because "Creative failed to satisfy the fact-pleading standard necessary under Missouri law." ThermoLife contends Creative failed to state a claim of injurious falsehood and tortious interference with a contract or business expectancy.

## B. Analysis

Personal jurisdiction refers "to the power of a court to require a person to respond to a legal proceeding that may affect the person's rights or interests." *State ex rel. Cedar Crest Apartments, LLC v. Grate*, 577 S.W.3d 490, 493 (Mo. banc 2019) (quoting *State ex rel. Bayer Corp. v. Moriarty*, 536 S.W.3d 227, 230–31 (Mo. banc 2017)). "The basis of a court's personal jurisdiction over a corporation can be general—that is, all-purpose jurisdiction—or it can be specific—that is, conduct-linked jurisdiction." *Roldan*, 587 S.W.3d at 641 (quoting *State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 46 (Mo. banc 2017)). Here, general jurisdiction is not applicable. Thus, specific jurisdiction is required.

"Specific jurisdiction over a foreign corporation exists when the underlying lawsuit arises from the corporation's contacts with Missouri." *Id.* at 641 (citing *State ex rel. PPG Indus., Inc. v.*

*McShane*, 560 S.W.3d 888, 891 (Mo. banc 2018)). A two-prong test must be met to establish specific personal jurisdiction over a foreign corporation: "(1) the defendant's conduct must fall within the long-arm statute, § 506.500; and (2) the court must then determine if the foreign corporation has the requisite minimum contacts so as not to offend due process." *Id.* (citing *PPG Indus., Inc.*, 560 S.W.3d at 891).[1] "A court evaluates personal jurisdiction by considering the allegations contained in the pleadings to determine whether, if taken as true, they establish facts adequate to invoke Missouri's long-arm statute and support a finding of minimum contacts with Missouri sufficient to satisfy due process." *Id.* (quoting *Cedar Crest Apartments, LLC*, 577 S.W.3d at 496 n.5).

As for the first prong about specific acts which may subject a defendant to personal jurisdiction, Missouri's long-arm statute, section 506.500.1 provides:

> Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
> . . .
> (3) The commission of a tortious act within this state; . . . .

§ 506.500.1; *see also Babb*, 638 S.W.3d at 106.

"A party relying on a defendant's commission of a tort within this state to invoke long arm jurisdiction must make a *prima facie* showing of the validity of his claim." *State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 139 (Mo. banc 1987) (citing *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. banc 1970)); *see also Babb*, 638 S.W.3d at 105 (quoting *Lindley*, 55 S.W.3d at 910); *Prima Facie*, Black's Law Dictionary (11th ed. 2019) ("Sufficient to establish a fact or raise a presumption unless disproved or rebutted . . . ."); *Showing*, Black's Law Dictionary (11th ed. 2019) ("The act or an instance of establishing

---

[1] All statutory references are to RSMo 2016, unless otherwise indicated.

6

through evidence and argument; proof <a prima facie showing>."). "A plaintiff need not prove all of the elements that form the basis of the defendant's liability, but must show that acts contemplated by the statute took place." *Babb*, 638 S.W.3d at 105 (quoting *Lindley*, 55 S.W.3d at 910). In other words, "for jurisdictional purposes," Creative must "satisfactorily plead[]" ThermoLife "committed the tort" of tortious interference with contract or business expectancy or injurious falsehood "in Missouri." *Roldan*, 587 S.W.3d at 642. If Creative properly pleads ThermoLife "committed a tort in Missouri, its conduct falls within the purview of Missouri's long-arm statute." *Id.* As to committing the tort in Missouri, "'[e]xtraterritorial acts that produce consequences in the state' . . . are subsumed under the tortious act section of the long-arm statute." *Bryant*, 310 S.W.3d at 232 (first quoting *Longshore v. Norville*, 93 S.W.3d 746, 752 (Mo. App. E.D. 2002); then citing *Schwartz & Assocs. v. Elite Line, Inc.*, 751 F.Supp. 1366, 1369 (E.D. Mo. 1990)); *see also Roldan*, 587 S.W.3d at 643.

As for the second prong, "[t]he Due Process Clause requires that a foreign corporation have minimum contacts with the forum state for the forum court to exercise personal jurisdiction over the defendant corporation." *Id.* at 642–43 (citing *Peoples Bank v. Frazee*, 318 S.W.3d 121, 128 (Mo. banc 2010)). Creative is correct, in Missouri, "a single tortious act is sufficient to support personal jurisdiction consistent with due process standards." *Id.* (quoting *Hartenbach*, 742 S.W.2d at 139). "Missouri courts may still assert personal jurisdiction over a non-domiciliary defendant corporation without violating due process if that entity has at least one contact with this state and the cause of action being pursued arises out of that contact." *Id.* (emphasis removed) (quoting *Cedar Crest Apartments, LLC*, 577 S.W.3d at 494).

We agree with Creative, "for jurisdictional purposes," if the tort is satisfactorily pled, the "alleged tortious behavior . . . is a contact contemplated by Missouri's long-arm statute." *Id.* at

7

642, 643. And this "alleged tortious contact, by itself, is sufficient to satisfy due process because [the claim] arises out of this contact with Missouri." *Id.* at 643. Even though the "alleged tort may be [the defendant's] only contact with this state, it is within the bounds of due process to allow Missouri courts to exercise personal jurisdiction over it." *Id.*[2] This, however, does not end our analysis.

For our convenience, we address Count II, injurious falsehood before Count I, tortious interference.

*Injurious Falsehood*

In Count II, Creative's first amended petition alleges the tort of injurious falsehood. Creative asserts ThermoLife falsely stated NitroRocket® violated "rights" owned by ThermoLife in letters and emails sent threatening to sue Creative's customers. In a claim for injurious falsehood:

> [o]ne who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

*State ex rel. BP Prods. N. Am. Inc. v. Ross*, 163 S.W.3d 922, 928 (Mo. banc 2005) (quoting *Annbar Assocs. v. Am. Express Co.*, 565 S.W.2d 701, 706 (Mo. App. 1978)); *see also* Restatement (Second) of Torts § 623A (1977).

When examining an injurious falsehood claim, "[d]efamation analysis applies to . . . injurious falsehood." *SEMO Servs., Inc. v. BNSF Ry. Co.*, 660 S.W.3d 430, 443 (Mo. App. E.D. 2022), *reh'g and/or transfer denied* (Jan. 17, 2023), *transfer denied* (Mar. 7, 2023) (quoting *State ex rel. Diehl v. Kintz*, 162 S.W.3d 152, 156 n.4 (Mo. App. E.D. 2005)). An injurious falsehood

---

[2] Because the parties briefed ThermoLife's allegation the case should be dismissed for failure to state a claim, we emphasize we are not addressing failure to state a claim, we are addressing a failure to adequately plead facts establishing personal jurisdiction over ThermoLife.

claim is properly dismissed "when the alleged defamatory statement is the basis of the claim but it is not actionable." *Id.* (citing *Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 829 F.3d 576, 580 (8th Cir. 2016) ("[F]or a statement to be actionable as injurious falsehood it must be defamatory.")); *see also Diehl*, 162 S.W.3d at 155–56, 156 n.4. "Whether language is defamatory and actionable is a question of law." *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 239 (Mo. App. E.D. 2011) (citing *Sterling v. Rust Commc'ns*, 113 S.W.3d 279, 281 (Mo. App. E.D. 2003)). Thus, "courts are empowered to determine whether an allegedly libelous statement is capable of a defamatory meaning." *Id.* (citing *Ribaudo v. Bauer*, 982 S.W.2d 701, 704 (Mo. App. E.D.1998)).

"To state a cause of action for libel, a plaintiff must make his allegations . . . *in the exact words alleged to be defamatory.*" *Tindall v. Holder*, 892 S.W.2d 314, 327 (Mo. App. S.D. 1994) (emphasis added) (quoting *Lorenz v. Towntalk Pub. Co.*, 261 S.W.2d 952, 953 (Mo. 1953)); *see also Lichtor v. Mo. Bd. of Registration for the Healing Arts*, 884 S.W.2d 49, 52 (Mo. App. W.D. 1994); *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 313 (Mo. banc 1993).[3] The reason for the rule is:

> Libel is usually published through easily reproducible means such as a writing, printing, broadcast, or electronic communication. Thus, in a libel case it is not unreasonable to expect a verbatim reproduction of the offending statement to assist the court in determining whether it is capable of defamatory meaning.

*Nazeri*, 860 S.W.2d at 313; *see also Tindall*, 892 S.W.2d at 327.

Here, Creative's first amended petition fails to reproduce the alleged defamatory statements or attach the letters or emails allegedly sent to its customers. Because Creative's first amended petition fails to set out the words published, it cannot be determined whether the statements are actionable. Thus, Creative did not "satisfactorily plead[]" that ThermoLife

---

[3] Written defamation is generally defined as libel. *See Defamation*, Black's Law Dictionary (11th ed. 2019).

"committed the tort" of injurious falsehood "in Missouri." *Roldan*, 587 S.W.3d at 642; *see also Hartenbach*, 742 S.W.2d at 139; *Tindall*, 892 S.W.2d at 327 (holding trial court did not err when it dismissed defamation claim for failure to quote the defamatory statement).[4]

*Tortious Interference with Contract or Business Expectancy*

In Count I, Creative alleges the tort of tortious interference with contract or business expectancy. As in Count II, Creative asserts ThermoLife tortiously interfered by sending letters and emails threatening to sue its customers based on a false statement about its "rights" over NitroRocket®. "Tortious interference with a contract *or* business expectancy requires proof of: (1) a contract *or* valid business expectancy; (2) defendant's knowledge of the contract *or* relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Bishop & Assocs., LLC v. Ameren Corp.*, 520 S.W.3d 463, 472 (Mo. banc 2017) (emphasis added) (quoting *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996)). Such claims may also be called "a tortious interference with business relations." *Rail Switching Servs., Inc. v. Marquis-Missouri Terminal, LLC*, 533 S.W.3d 245, 257 (Mo. App. E.D. 2017) (citing *Fischer, Spuhl, Herzwurm & Assocs., Inc. v. Forrest T. Jones & Co.*, 586 S.W.2d 310, 315 (Mo. banc 1979)).

"Despite some lack of clarity, Missouri law continues to treat [the] two forms of tortious interference as distinct and separate torts." *Id.* at 258 (first citing *Honigmann v. Hunter Grp., Inc.*, 733 S.W.2d 799, 807–08 (Mo. App. E.D. 1987); then citing Restatement (Second) of Torts § 766-(b) (1979)). "Generally, allegations of tortious interference with a contract refer to the

---

[4] To the extent Creative argues the letters and emails were available as exhibits or attachments to its motion for default judgment, we note, as detailed in the standard of review, we are limited to reviewing the allegations as stated in Creative's first amended petition and the oral testimony recorded in the transcript on appeal. *Babb*, 638 S.W.3d at 104. Neither provide the alleged defamatory statements. Additionally, even though Creative argued in its brief on appeal ThermoLife's "unjustified tortious acts directed into Cape Girardeau County included threatening [Creative] and its customers with lawsuits alleging violations of the federal Lanham Act and the federal Patent Act if those customers did not immediately cease purchasing NitroRocket® from [Creative]," such statements were not included in its first amended petition or in the oral testimony.

defendant's intrusion on an existing contract"; whereas "allegations of tortious interference with a business expectancy generally pertain to the defendant's interference with a reasonable expectancy of future financial benefit." *Id.* at 258–59 (first citing *City Bank & Trust Co. v. Thomas*, 735 S.W.2d 121, 122–23 (Mo. App. E.D. 1987); then citing Restatement (Second) of Torts § 766 (1979); and then citing *Stehno v. Spring Spectrum, L.P.*, 186 S.W.3d 247, 250–51 (Mo. banc 2006)). This distinction between the two forms "is reflected by the Supreme Court's use of the disjunctive in discussing the elements of the separate theories." *Id.* at 259 (citing *Bishop & Assocs., LLC*, 520 S.W.3d at 472) (stating the elements for "[t]ortious interference with a contract or business expectancy requires proof of: (1) a contract *or* valid business expectancy") (emphasis original).

Here, it is unclear which form of tortious interference Creative is alleging: tortious interference with a contract *or* tortious interference with a business expectancy. Under Count I, paragraph nineteen, Creative states it "has had at all relevant times contractual and business relationships with its customers . . . ." But, elsewhere in Count I, Creative states it "has had at all relevant times, a valid business expectation that its customers . . . would continue to purchase, or begin purchasing, NitroRocket® from Creative." Moreover, during the trial court proceedings on October 3, 2022, Creative's attorney stated:

> The sole tort that we are alleging in this case is tortious interference with a contractual relationship. ThermoLife sent letters to a customer of my client. We have identified that customer. That customer terminated its relationship, terminated its contract with Creative Compounds specifically because of the allegations in ThermoLife's letter.

Even though the elements for the two forms are often listed together, analyzing them separately is helpful. *See id.* at 258–59. A claim for tortious interference with a contract requires: "(1) a contract; (2) defendant's knowledge of the contract; (3) intentional interference by the

11

defendant inducing or causing a breach of the contract; (4) absence of justification; and (5) damages resulting from defendant's conduct." *Id.* (quoting *Howard v. Youngman*, 81 S.W.3d 101, 112–13 (Mo. App. E.D. 2002)); *see also Coverdell v. Countrywide Home Loans, Inc.*, 375 S.W.3d 874, 881 (Mo. App. S.D. 2012); *Duvall v. Silvers*, 998 S.W.2d 821, 827 (Mo. App. W.D. 1999). "[T]he plaintiff must plead and prove a valid contract that was in effect at the time of the induced breach." *Rail Switching Servs., Inc.*, 533 S.W.3d at 259–60 (first citing *Rhodes Eng'g Co. v. Pub. Water Supply Dist. No. 1*, 128 S.W.3d 550, 565 (Mo. App. W.D. 2004); then citing Restatement (Second) of Torts, Section 766 cmt. f. (1979)). Additionally, "[b]reach of a contract induced or caused by the defendant is a necessary element of a claim for tortious interference with a contract." *TNT Amusements, Inc. v. BFC Enters., Inc.*, 613 S.W.3d 403, 414 (Mo. App. E.D. 2020) (citing *Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 590 (Mo. App. E.D. 2008)).

Here, Creative makes no allegation WG Nutrition breached its contract, only that it "terminated its agreement with Creative to purchase NitroRocket®." Thus, Creative did not "satisfactorily plead[]" that ThermoLife "committed the tort" of tortious interference with a contract "in Missouri." *Roldan*, 587 S.W.3d at 642; *see also Hartenbach*, 742 S.W.2d at 139. Nonetheless, even though Creative did not show the nature of its contractual relationship with WG Nutrition, in the context of at will contracts, "[a] third party's interference with contracts terminable at will is actionable, because, until one of the contracting parties terminates the contract, the parties are in a subsisting relation that presumably will continue and is of value to the plaintiff." *Clinch v. Heartland Health*, 187 S.W.3d 10, 16 (Mo. App. W.D. 2006) (citing *Hensen v. Truman Med. Ctr., Inc.*, 62 S.W.3d 549, 553 (Mo. App. W.D. 2001)). If the contract was terminable at will, the fact WG Nutrition "did not breach its contract with [Creative] is of no consequence in determining whether or not [ThermoLife] tortiously interfered in that

12

relationship." *Id.* Even then, Creative still had to allege ThermoLife "used improper means in interfering with [Creative's] contractual relationships with [WG Nutrition]." *Id.* at 17 (citing *Nazeri*, 860 S.W.2d at 317). As we will discuss below, Creative did not adequately allege enough facts to establish improper means. *See generally Roldan*, 587 S.W.3d at 642; *Adams v. USAA Cas. Ins. Co.*, 317 S.W.3d 66, 76 (Mo. App. E.D. 2010).

A claim for tortious interference with a business expectancy requires: "(1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Rail Switching Servs., Inc.*, 533 S.W.3d at 259 (quoting *Stehno*, 186 S.W.3d at 250); *see also Bell v. May Dep't Stores Co.*, 6 S.W.3d 871, 876 (Mo. banc 1999). "[T]he plaintiff must plead a valid business expectancy; 'it is necessary to determine if the expectancy claimed was reasonable and valid under the circumstances alleged. If it is not, there was nothing for defendants to have interfered with.'" *Rail Switching Servs., Inc.*, 533 S.W.3d at 260 (quoting *Gott v. First Midwest Bank*, 963 S.W.2d 432, 438 (Mo. App. S.D. 1998)).

"No liability arises for interfering with a . . . business expectancy if the action complained of was an act which the defendant had a definite legal right to do without any qualification." *Stehno*, 186 S.W.3d at 252 (quoting *Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n*, 796 S.W.2d 369, 372 (Mo. banc 1990)). But, even if there is a definite legal right "for interfering with a business expectancy, the interfering party must not employ improper means." *Id.* (citing *Nazeri*, 860 S.W.2d at 317). So, "[a] defendant's conduct is without justification when the defendant uses 'improper means' to further his interests and to the plaintiff's detriment." *SEMO Servs., Inc.*, 660 S.W.3d at 439 (quoting *Nazeri*, 860 S.W.2d at 317). "[O]nly a showing of improper means satisfies the burden of establishing a lack of justification in a tortious

13

interference with expectancies case." *Id.* (quoting *Clinch*, 187 S.W.3d at 17). "Improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." *Bishop & Assocs., LLC*, 520 S.W.3d at 472 (citing *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 20 (Mo. banc 2012)).

Here, Creative claims WG Nutrition "terminated its agreement with Creative to purchase NitroRocket® directly and solely because of its receipt of a letter from ThermoLife . . . ." and "additional customers of Creative's who had, or would have, purchased NitroRocket® cancelled such purchases, or decided to not begin purchasing NitroRocket®, as a direct result of receiving from ThermoLife correspondence as . . . described herein . . . ." Creative claims ThermoLife lacked justification "because ThermoLife had admitted to Creative's representative, prior to sending the above-described letters to Creative's customers, that Creative's customers' offering for sale and/or selling to consumers of a product that included NitroRocket®, without any other basis, did not violate any right owned by ThermoLife." In other words, for its claim of intentional interference with a business expectancy, Creative alleges by sending (or publishing) the false threats (or defamatory statements) via letters and emails to its customers, ThermoLife intentionally interfered with a valid business expectancy that customers would purchase or continue to purchase NitroRocket®. *See Castle Rock Remodeling, LLC*, 354 S.W.3d at 245 (citing *Capobianco v. Pulitzer Pub. Co.*, 812 S.W.2d 852, 860 (Mo. App. E.D. 1991)). The "improper means" establishing justification would be the sending of the false threats or defamatory statements. *See Bishop & Assocs., LLC*, 520 S.W.3d at 472 (citing *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 20 (Mo. banc 2012)). But, "where a tortious interference claim is based upon an alleged defamation, if a plaintiff's defamation claim fails, the tortious interference

14

claim must also fail because the plaintiff cannot establish an absence of justification as a matter of law." *Id.* (citing *Capobianco*, 812 S.W.2d at 860). Because Creative's injurious falsehood claim fails, "any alleged interference with a business expectancy" based on such statements in the letters and emails also fails. *Id.* Thus, Creative failed to plead facts showing an absence of justification. *Id.*; *see also Adams*, 317 S.W.3d at 76. So, Creative did not "satisfactorily plead[]" that ThermoLife "committed the tort" of tortious interference of a business expectancy "in Missouri." *Roldan*, 587 S.W.3d at 642; *Hartenbach*, 742 S.W.2d at 139.

Again, given the lack of specificity in the first amended petition, to the extent Creative attempts to premise its interference claim on the threats to sue alone, for jurisdictional purposes, its pleadings are still not satisfactory. In *Luketich v. Goedecke, Wood & Co., Inc.*, an employee claimed his former employer was tortiously interfering with the business relationship with his new employer. 835 S.W.2d 504, 506–07 (Mo. App. E.D. 1992). The employee claimed the "interference with his relationship" with his new employer was caused by his former employer's "threat to sue" his new employer and himself for "violation of its non-compete covenant." *Id.* at 508. This Court noted "[a]s a matter of law," his former employer "was justified in attempting to enforce its rights under the non-compete agreement with [the employee] as long as [the former employer] had a reasonable, good faith belief in the validity of the agreement." *Id.* When claiming the "interference with [the] relationship" is caused by a defendant's "threat[s] to sue," a defendant may in some circumstances, "[a]s a matter of law," be "justified in attempting to enforce its rights," as long as the defendant does not do so in "bad faith." *Id.* at 508–09. The "threat to sue" as "interference with [the business] relationship" is wrongful if done so in "bad faith;" meaning the defendant "could not or did not reasonably believe in the validity of its" claim. *Id.*; *see also* Restatement (Second) of Torts § 767 (1979) (Threats to sue are "ordinarily

wrongful" or improper "if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication.").

Here, Creative needs to allege facts that ThermoLife's threats to sue were done so in bad faith to support an absence of justification. *Adams*, 317 S.W.3d at 76; *Bishop & Assocs., LLC*, 520 S.W.3d at 472 (citing *W. Blue Print Co.*, 367 S.W.3d at 20); *Luketich*, 835 S.W.2d at 508–09. In its first amended petition, Creative states ThermoLife lacked justification because it "admitted to Creative's representative, prior to sending the [threatening] letters to Creative's customers, that Creative's customers' offering for sale and/or selling to consumers of a product that included NitroRocket®, without any other basis, did not violate any right owned by ThermoLife." But, Creative never clarifies what "rights" are at issue in its first amended petition. During the trial court proceedings on October 3, 2022, Creative's counsel attempted to clarify the rights being referred to are intellectual property rights: "Now, the rights -- if all that this takes, if all that this needs is that I add two words to this first amended petition. . . . I will add the terms intellectual property before the words rights." Even then, it is still unclear what intellectual property rights are at issue. Intellectual property is a "category" which "comprises primarily trademark, copyright, and patent rights, but also includes trade-secret rights, publicity rights, moral rights, and rights against unfair competition." *Intellectual Property*, Black's Law Dictionary (11th ed. 2019).

In order to determine whether Creative alleged enough facts to support an absence of justification, the rights at issue must be determined given the different areas of law implicated. For example, if the rights concern patents, the question becomes whether ThermoLife made a

16

bad faith assertion of patent infringement, which presents a federal preemption issue. *Lite-Netics, LLC v. Nu Tsai Cap. LLC*, 60 F.4th 1335, 1343 (Fed. Cir. 2023) (quoting *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004)) ("[F]ederal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation."); *see also Emerald Pointe, L.L.C. v. Jonak*, 202 S.W.3d 652, 665 (Mo. App. S.D. 2006) (citing *Cook v. Cook*, 97 S.W.3d 482, 485 (Mo. App. W.D. 2002)) ("[T]his Court has a duty to *sua sponte* review its subject matter jurisdiction because without it, this Court has no power to act."). Thus, without specificity regarding the "rights" at issue, it is unclear what facts would need to be pled to support absence of justification, or if this Court would maintain subject matter jurisdiction.

Because Creative did not satisfactorily plead *prima facie* facts ThermoLife committed the tort of tortious interference with contract or business expectancy or injurious falsehood in Missouri, Missouri's long arm statute does not attach. *Roldan*, 587 S.W.3d at 643; *Hartenbach*, 742 S.W.2d at 139. Thus, Creative did not adequately plead facts establishing personal jurisdiction over ThermoLife. *Roldan*, 587 S.W.3d at 643; *Babb*, 638 S.W.3d at 104. The trial court did not err in granting the motion to dismiss for lack of personal jurisdiction.

Point I is denied.

## Conclusion

We affirm the judgment of the trial court.

_____
Philip M. Hess, Judge

Kelly C. Broniec, P.J. and
James M. Dowd, J. concur.

17